Good afternoon, Your Honor. May it please the Court, Brandon LeBlanc on behalf of the appellant Angelo Cibrian. Your Honors, there was no emergency presented on February 27, 2013 so as to have justified the San Francisco Police Department's initial warrantless entry of 61 Cameron Way. And because the initial search was unlawful, the second so-called parole search was also unlawful because it was significantly motivated by what the officers had observed during the initial unlawful search. As such, this Court should reverse the District Court's denial of Mr. Cibrian's motion to suppress and vacate his conviction. I'll turn first to, in brief, the circumstances that led to the officers being dispatched to 61 Cameron Way. We know the facts, so just go on from there. Well then, Your Honor, it's our position there was no emergency. The Court's aware of why we make that argument. Moving beyond that, we arrived then at essentially the taint analysis and whether or not, based upon the untainted facts, there was probable cause to believe that Mr. Cibrian... I'm not saying you can't make your argument. I'm just saying don't walk through the facts and just tell us what your argument is as to the first issue. Well, the first issue, Your Honor, this Court has said that in order for there to be a justifiable warrantless search under the emergency exception, officers have to have an objectively reasonable basis for concluding there's an immediate need to protect themselves or others from serious harm. In this instance, the reporting, the alleged victim had contacted her best friend at some point after 6 a.m. that morning to report what she described happened. The best friend then called the mother. The mother didn't call 911. Instead, she called the parole officer. The parole officer only urged her to call 911. At that point, only then was 911 contacted. And the limited information that was relayed to 911 dispatch was that the alleged victim had left the home. And it must have been safe or not so concerned about her safety so as to not have called 911 herself to protect either herself or her son. I think it's a close question on whether that initial sweep was permitted. On the other hand, if I were a police officer and I knew the background complaint that he had threatened the wife and the child or the mother and the child with the gun and you get him out of the house, if I'm a police officer, I might have a somebody in the house who's in trouble. I understand that maybe that's not quite the standard for exigent circumstances, but if somebody had been in that house, she'd return to the house, she'd been injured, the cops don't go upstairs. When somebody finally shows up three hours later, she's bled to death. Somebody's going to go after those cops for, you didn't even go in the house after you took that guy? You knew he was violent? I mean, this is a close case for me on that that does make it a close case. It's tough for the officers to know how to react in that moment. If I'm an officer in that circumstance, I'm gonna go in there to make sure that there's nobody, given the background of what I know, I'm gonna go in there to make sure that there's nobody in there who's hurt. Well, I think they're lesser steps that the officers could have taken in that moment rather than barging in. I mean, to be honest, the real problem here is the way our case laws put together, once he goes in there, he's not limited to the reason he went in there. I mean, if he just went in there, looked for the woman and the woman wasn't there and came out, we wouldn't have a case here. The problem is that he found things while he was in there. That's right, Your Honor. If the house was bare, I don't think there'd be much of an argument here. But because the officers went in and saw what we contend is the strongest evidence of residency in this case. They saw a substantial amount of male clothing. They saw what they thought were thousands and thousands of dollars. I mean, my reaction to that stuff is that, you know, it would have been awful if they, it would have been not much use if they referred to, if they used it as evidence that he lived there, because it doesn't prove anything. It could have been any guy. Who knows who he is? So it was kind of stupid evidence. It really, they might have relied on it when they were trying to, because they put things in there that aren't terribly pertinent, but it really isn't terribly pertinent. I'm not sure I understand Your Honor's question. I guess what I'm saying is that the usefulness of any of this information that they got when they went in here in this instance was marginal. And that's where we would disagree, Your Honor. In this instance, the officers, the untainted information, let's take out whatever the officers saw when they did the protective sweep. The untainted information that the officers knew were that Mr. Cibrian was on parole and there was a warrant for him, that he, the caller had stated that he lived there and was at home. That wasn't Mr. Cibrian's words. That was the caller's when they arrived. And that it was his DMV address. He recently changed DMV address. Right. That's the untainted facts. That's pretty convincing evidence that that's where he lives. Right. But if you look at this Court's standards, the opinions in Granberry, where the Court, this Court said that further investigation was required in an instance. Let me put it this way. This is what I was trying to say before. If I didn't think all that was enough, I certainly wouldn't think the fact that there were men's clothes in the house fixed it. If you did not think that was enough to establish residency. The fact that there was men's clothing in the house and some baseball cards, which has nothing to do with anything, certainly isn't going to fix the problem. I think the analysis, Your Honor, that the Court, under Murray, essentially borrowing from that, is that if, to the extent that the illegally derived evidence significantly directed the investigation after they observed it, then it taints that decision to then conduct the parole search. Mr. LeBlanc, Judge Chin found at the conclusion of the hearing, which spanned two days, the Court finds that the parole search would have been conducted even if the, quote, tainted, unquote, protective sweep had not occurred. Now, we review that for clear error, do we not? You do, Your Honor. It's a credibility determination. Why is that a clear error? I think, Your Honor, where we land in this case is that the government and these officers took a different position early in the case. They filed declarations stating that they had relied on what they observed as part of their decision, that that was an important part of it. They, three officers, signed declarations saying that Officer Correa, at the record at 136, said, based upon everything he observed, it led him to conclude that an adult male resided at 61 Cameron Way. Fine. What does that make of him? Well, I'm sorry, Your Honor. I still say that if he had come to me with that, I would have said, fine, you know, there are a lot of candidates for adult male. Correct, Your Honor, but in this case where these officers are trying to establish, identify the residential relationship that Mr. Cibrian had to 61 Cameron Way, once they actually go into the unit, the apartment, and they observe male clothing, and that's what they're trying to figure out. That was the chief question after they arrested him. Let's focus on the parole search. Do we have enough here to justify a parole search? They went into the apartment when there was no necessity for them to do so. They see all of these things that confirm. That's not why they said they went in the apartment. They said they went in the apartment because they were trying to find out whether there was somebody there. That's right, Your Honor. We're not really focused on their subjective motivations, but what they learned in that process, what they learned in that process fed the decision to conduct the parole search. That's our position. Now, I'm getting, I may be getting too far down into the weeds. I noticed that Mr. Cibrian is a very small man. Did they comment on the size of the men's clothing? They did not, Your Honor. They had no reason to think it was his clothing. Well, I should- That's what I'm trying to get to, right? Well, I should clarify, Your Honor, that the reporting caller's description of his height was inaccurate slightly, but that was never part of the analysis of whether or not the clothing seemed to fit his physical frame. I did want to respond briefly to Judge Bea's question. It is a credibility determination. Our position, Your Honors, is where the credibility, and I'm citing to the Anderson case here, when the story itself is so internally inconsistent or implausible in its face that a reasonable fact finder would not credit it, the court of appeals, this court, may find clear error. In our view, the notion that these officers, what they testify to is that it was not a factor at all. When previously they had filed declarations with the court, the government had taken the position that, in fact, it was a factor. They tried to distance themselves from that only after our office put forth, made it clear to the court what the legal import was. So the credibility of the officers' testimony- And the credibility of the officers was tested on cross-examination, and Judge Chen said Sergeant Hall, the supervising officer and final decision maker on whether to conduct the parole search, credibly testified that this was a routine matter. That's correct, Your Honor. I'd like to reserve the remainder of my time. Take care from the other side, and you've saved a lot of time. Thank you. May it please the Court. Good morning, Your Honors. Owen Mardekin for the United States. The district court properly upheld the parole search in this case. There was probable cause to believe that the defendant resided at the searched address. There was no clear error in the factual findings that Judge Chen made. And though this Court doesn't have to, as Judge Chen did not, reach the actual emergency exception question, there were substantial facts for an officer of reasonable caution to find an emergency here justifying the first sweep. So I'd like to go back to the evidentiary hearing, because the judge did hear from four witnesses who testified, also based on the evidence in this case, that there was a DMV that placed the defendant at this address. Can I ask one question about the DMV thing? Yes. You know, I had sort of discounted the argument that this was just a mailing address. But in fact, looking at the document, it actually has two addresses on there now. It has a mailing address and it has a residence address. Yes. So why could they rely on a mailing address? There's still a different residence address. And that's the issue here, is residence, not mail. True. Now, the actual document shows a second address that was updated years earlier. So the second address was put in in 2011. Right. But it's still listed as his DMV residence. Yes. But that has to be taken, Your Honor, I think, in conjunction with the testimony during the hearing where the officer said, well, it says mailing address, but we always routinely use that as the residence, and that any second address is generally a PO box or something like that. So in this case, especially given the fact — and the judge, Judge Chen, actually questioned the officer directly on this point and said, well — Maybe they shouldn't be doing that. — that Judge Chen should not have been questioning — No, maybe they shouldn't be using a mailing address for a residence address when there's a separate residence address. Well, maybe the computer printout's language should be changed. But they're testifying based on practice. They run these DMV reports as a matter of course. And so he's saying as a matter of practice, it may say mailing address, but it's always the residence address. So I think if there's something to change, it would be maybe the way these forms are printed out. But I think that highlights the point, is that this evidence was all tested. There was an evidentiary hearing. And it's not just the DMV address and the fact that it was very recently updated, but the report by the mother that not only placed him there, but also said that he lived there. And the mother, who I think is credible or should be a credible reporting party because she cares about her daughter. She doesn't have a reason to lie about where she thinks this person is. And then finally, the fact that he was there. He was there when they showed up. So then the question turns to the taint issue, the Duran-Orozco issue. And here, the district judge did exactly what the Ninth Circuit, what this Court said in Duran-Orozco, it's supposed to do. It conducted an evidentiary hearing to ask the specific question, would the officers still have conducted the second search, assuming the first search was illegal? And three officers testified to that very question, yes. And they didn't just conclusively testify in a conclusory fashion. They provided facts. They said, well, in our common practice, if we have a DMV address, this is Sergeant Hall testifying, and we can also place the person there physically, that's enough. That's what we always rely on. So given that testimony that the judge chose to believe, there's no reason for the judge to find that the pants or the trading card somehow would have skewed the entire analysis. And I think, you know, under this Court's analysis — However, I presume that they could have based the parole search, I mean, as to why they would have done it, given those other things on the fact that there had been this allegation that he was engaged in domestic violence the day before. That's an additional — in other words, I don't think they have to demonstrate, or do they have to demonstrate, that they would have done the parole search just in an administrative or the regular way, no matter what they knew about this guy. Or I presume it's permissible to do a parole search that you would not have otherwise done because you think he did something — he committed a crime the day before. Sure. They could have — they might have done a parole search just as a matter of course with the parole officer. But let me ask it this way. But I understand that they've got reason to think that he's misbehaved, and they certainly have reasons to check into him and do various parole searches. But do they have a right under the terms of the parole search that they're allowed to do to search just any place? Or if they're going to search a residence, does it have to be his residence? Because I thought the problem here is that they can't search just any building with which he might have been connected. Agreed.  Agreed, Your Honor. And I agree with that. The reason for the parole search doesn't answer the question as to whether it's his residence. Correct. But the other evidence does answer that question, which is the DMV, et cetera. And Granberry, I think, that has to do with a parolee when they want to search a non-reported address. That's if the DMV actually says there's another address, there's one address, and the police want to search a different address. So if anything, that highlights, I think, the importance of the DMV report in this whole calculus. I'd like to move on, if I may, to the emergency search question, because I think it is an interesting issue. I think it's an important issue. And I think that it would be — I don't think the test should just be the passage of time. I think one indication of that is Your Honor's dissent in Black, where the question was that too little time had passed. And then on the other hand, there's Martin v. City of Oceanside. For a completely different reason. It was because it wasn't logistically possible for it to have gotten there. Correct. Whereas on the other end, Martin v. City of Oceanside, a matter of days go by. Here, yes, eight hours have passed, but during those eight hours, we don't — I don't think she was and was worried about her at the moment. There was nothing in this phone call that suggested that this mother was worried about her safety at that moment. Well, I think the mother's report is that she just found out all this. The word she uses is just. I just got off the phone with the defendant. I just got off the phone with this friend. Yeah, right. With a friend of the daughter. And I just got off the phone with a parole officer. So the implication is that she just found all this information out, and all of a sudden she's calling 911. She wants the guy arrested, but it's not an implication that she wants — that she, at the moment, thinks the daughter's in danger. I don't know. I think she's concerned about her daughter. She says that she heard that the daughter was threatened with a gun, that she has some concerns about this defendant, that she knows he has a gun or believes he has a gun. So I would have to disagree. I think it shows that she is concerned about her daughter. No, she could have been concerned that the daughter was going to come back. In fact, the daughter did come back while the search was going on, as I understand it, the second search. Yes. I think it's a little — the record isn't clear about what the daughter was actually doing during this whole time. But I think the fact that no one knew where she was is significant, or at least that the mother didn't know where she was, and that the mother couldn't reach her because the phone that she would ordinarily call was in the defendant's possession, and also that the victim was not employed, so it wasn't as if they could go to a workplace to see if she had shown up there, and she was in the possession or in the company of her 15-month-old. I think it's not unreasonable to assume that she might want to go home at some point with that — with a young baby. So I think there's enough under this Court's precedent to find that these officers had reason to enter under the emergency exception to make sure there wasn't somebody in there who was quietly wounded and maybe even dying. Now, do you think we need to reach that question? No, in a word. And so I think there's plenty — Given the fact that the district court didn't reach it, wouldn't we have factual finding problems? I mean, in other words, we don't have any fact findings with regard to the questions. So I don't know that we could reach it. No fact findings about specific credibility on those facts. Right. But there's testimony that, I mean, if DeNovo — would be a set of inferences for the district judge, no? Yes, but I think, you know, those facts were also tested on cross-examination because there was — I understand that, but we're not finders of fact. Not specific findings because the Court didn't need to reach that issue. Yes. Okay, thank you. Thank you. Let's put one minute on the clock. I think we just gave you a gift of 15 seconds. Thank you so much. Your Honors, I'll be brief. Just to touch on something that Judge Berzon raised. There were two mailing — there were two addresses connected with Mr. Sibrian here from the DMV checks that the officers did, the three checks. The officers testified that it was their custom, essentially, to rely — treat a mailing address as essentially — Well, apparently when these guys went and asked whatever source they use what his DMV address is, they only got the mailing address. Right, Your Honor. So as far as they were concerned, that was the address. The computer check returned, as I understood it, a second address, the Oakland address. I thought it didn't. I thought their point was that the way their computer is set up — the way their internal communication system is set up, at least, they only got the mailing address. So my understanding was that they also returned — understood that there was a second unrelated address in Oakland. I don't think so. But they treat them as one and the same. That's what I understood them to be saying. And, you know, that may be a problem, and I don't know why that excuses it if it's a problem, but that is my understanding. They're saying that when the police department lifts a DMV address off, they lift off the mailing address. I don't know why. I'm out of time, Your Honor. You can answer. It's okay. I just — I guess my brief response is the officer — Officer Hall repeatedly said he was just looking for anything to connect Mr. Sibrian to the address. And when the DMV returned that he had changed his mailing address, that was sufficient for him. Even though it was designated as a mailing address, it was going to be treated by him and his other officers as equivalent to a residential address. And I view that as a problem in the context of other factors they were considering in trying to determine his residential relationship to the property. Okay. Thank you very much. Thank you, Your Honor. United States v. Sibrian, submitted for decision. And that completes the argument this morning. Thank you for your patience.
judges: Fletcher, Berzon, Bea